Michael Cooper, Dallas, Tex., for appellant.

E.P. Keiffer, Dallas, Tex., for appellee.

**Samuel A. MORENO, Appellant,**

v.

**Michael ASHWORTH, Trustee for Petroleum Energy Equipment Corporation, and the Official Unsecured Creditors Committee, Appellee.**

Civ. A. No. 3–88–2683–H.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 31, 1989.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Before the Court is Appellant's Brief, filed November 28, 1988 and Appellee's Response, filed December 30, 1988. The standard of review to be applied by this Court in a bankruptcy appeal is set forth in 11 U.S.C. Rule 8013. That Rule provides that a bankruptcy court's findings of fact may not be set aside unless clearly erroneous. Thus, although this Court may readily overrule a bankruptcy court's interpretation of law, it must defer with respect to findings of fact that are not clearly erroneous. *Matter of Leonard,* 849 F.2d 974, 976 (5th Cir.1988); *In re First South Savings*

*Association,* 820 F.2d 700, 711 (5th Cir. 1987).

This is an appeal from an Order of the Bankruptcy Court entered June 1, 1988, rendering judgment against Appellant, granting non-dischargeable judgments and an Order denying discharge. Appellant's brief raises two issues on appeal:

1) Whether the Order of the Bankruptcy Court entered on June 1, 1988 denying a discharge to the Debtor, Samuel A. Moreno, and Findings of Fact Numbers 37–40 were clearly erroneous; and

2) Whether the Order granting a non-dischargeable judgment against the Debtor, entered on June 1, 1988 and Findings of Fact Numbered 37, 39, 43(c), 45–48, 50–52, 54–58, 60–63 were clearly erroneous.

## FACTS

PEEC filed a bankruptcy petition on May 16, 1983. Subsequently, on December 16, 1983, the Trustee, Michael Ashworth, was appointed by order of the United States Bankruptcy Court. PEEC's President, Samuel Moreno, filed a Chapter 7 bankruptcy proceeding in May, 1985 and later the Moreno Trustee was appointed.

On September 23, 1985, Ashworth filed, as an adversary proceeding, a complaint to determine the dischargeability of debt under § 523(a)(4) of the Bankruptcy Code in the Moreno bankruptcy. Ashworth also filed an objection to the § 727 discharge of the Debtor, Moreno. The Bankruptcy Judge consolidated the two proceedings.

On November 20, 1986, an evidentiary hearing was held on the consolidated proceedings.[1] At the hearing, the Judge ruled:

"I find that there was insufficient proof of the 523 allegation of Ashworth, but that comes into play under the 727 problems that we have to solve at a later date in analyzing whether to deny the discharge of Moreno ... This is just a

1. Appellant focuses on the Bankruptcy Judge's concern over whether there was adequate proof in the record to deny Moreno's discharge and to enter a non-dischargeable judgment against him. See above quotation.

preliminary finding on that [523], but I have made a final finding with regard to the contract and the ownership of the contract.[2]

Tr. at 198, 201.

The Judge directed counsel to file an analysis concerning Moreno's discharge. Tr. at 199–201. Counsel for Ashworth asked if he could also present argument to prompt the Court's reconsideration of its preliminary finding on the § 523 issue. Tr. at 201. The Court responded that it would consider such argument. The Judge stated:

"I really am interested in if Mr. Wright [Counsel for Ashworth] wants to present something strong on the 523 argument and I am most—I am most interested, I am most zeroed in on the question of the 727 discharge and whether we have enough quantum of proof to deny his discharge. It smells like it, it looks like it, but whether we have it in the record, I don't know."

Tr. at 205.

Counsel for Ashworth filed a brief covering the § 523 issue on February 26, 1988. Appeal Record, Item 57. On March 18, 1988, the Bankruptcy Judge issued a second Show Cause Order directing Moreno to show cause why the Bankruptcy Court should not enter the Order Granting the Non–Dischargeable Judgment and the Order Denying Discharge. Those signed Orders were filed on June 1, 1988 after the Judge had an opportunity to review Moreno's Case File and Moreno's Show Case Response, filed on May 2, 1988.

## ISSUE NO. 1

■ The first question that faces the Court is whether the Bankruptcy Judge's Findings of Fact 37–40 in his Order Denying Discharge of Bankruptcy were clearly erroneous.[3] With regard to the consulting contract, the Judge held:

2. See below for further discussion of the contract.

3. Facts 37–40 are stated as follows:
"37. The Consulting Services Agreement represented additional consideration for the sale

"I find that that contract was not an executory contract. That contract was a fixed obligation by HR and its successor and/or Perry. Perry's the Obligor to pay Moreno that amount of money period. And it was not executory in substance.

It was made to appear executory and based on conditions of services, but it was not in my view executory and it is in substance an obligation to pay. It is a receivable."

Tr. at 203.

Known to the Bankruptcy Judge was the fact that the Consulting Agreement did not require Appellant to put in any time to be paid his monthly payment of $4,166.67. The Consulting Agreement also gave Appellant's wife 50% of the monthly payments over five years (or up to $125,000.00) if Appellant predeceased his wife (Appellee's Brief at 4 (citing Stip. Ex. # 6)).

On December 9, 1983, Ashworth met with the Appellant who told Ashworth that

he (Appellant) had no interest in TMG or various other business entities. Appellant states in his brief (p. 8) that he actually owned 67% of the stock in TMG, as well as stock in other companies. Tr. at 18, 123. Appellant never independently notified the Trustee of the stock sale closing or the Consulting Agreement. Neither did Appellant independently offer the stock payment to the Trustee, but paid only after a temporary restraining order trapped the funds. Tr. at 36–37.

In light of these facts, the Court finds that the Bankruptcy Judge's Findings of Fact 37–40 were not clearly erroneous and that his decision to deny the discharge of bankruptcy was the correct one.

## ISSUE NO. 2

The next question to be considered by the Court is whether Findings of Fact Numbered 37, 39, 43(c), 45–48, 50–52, 54–58, 60–63 were clearly erroneous.[4] In De-

of Mr. and Mrs. Moreno's stock in TMG to Perry.

38. Moreno's transfer of his stock in TMG to Perry was made with the intent to hinder, delay or defraud his creditors.

39. Moreno concealed a portion of the purchase price of his stock in TMG in the Consulting Services Agreement.

40. The concealment of a portion of the purchase price of his stock in the Consulting Services Agreement was done by Moreno with the intent to hinder, delay or defraud his creditors."

4. The relevant Findings of Fact are as follows:

"37. In December 1983 Samuel A. Moreno ("Moreno") advised Michael Ashworth, Trustee for the Estate of Petroleum Energy Equipment Corporation ("PEEC") that he did not own an interest in The Moreno Group, Inc. ("TMG") or H-R Industries.

39. Moreno intentionally deceived Michael Ashworth, Trustee, as to his ownership interest in TMG."

"43. None of the Moreno affiliated entities in finding # 40 ... conducted any business with PEEC."

45. Moreno directed the payment of the sums to the affiliated entities listed in finding # 40.

46. Moreno derived benefit from the payment of sums to the affiliated entities listed in finding # 40.

47. PEEC received no consideration for and derived no benefit from the payment of sums to the affiliated entities listed in finding # 40.

48. The payments made to the affiliated entities in finding # 40 were in fact loans to Moreno."

"50. Moreno intentionally altered the general ledger of PEEC to deceive the creditors of PEEC into believing that Moreno only owed PEEC $46,775.23 when Moreno actually owed PEEC at least $186,779.64.

51. The alteration of the general ledger of PEEC by Moreno was an act of fraud and defalcation against PEEC in violation of 11 USC § 523(a)(4).

52. Moreno was acting in a fiduciary capacity as President of PEEC at the time he made the intentionally deceiving statements, had the ledgers of PEEC altered, and directed the payments to affiliated entities."

"54. The loans from PEEC to Moreno were in violation of Article 2.02(A)(6) of the TBCA.

55. The funds used to make the payments to the affiliated entities in Finding # 40 were funds which were entrusted to Moreno as president of PEEC.

56. The funds used to make the payments to the affiliated entities in Finding # 40 were funds which were appropriated by Moreno for his own purposes and not for the purposes or benefit of PEEC.

57. Moreno appropriated the funds with the intent to deceive PEEC and its creditors.

58. The violation of 2.02(a)(6) of the TBCA by Moreno was embezzlement within the meaning of 11 USC § 523(a)(4)."

"60. Moreno is liable to PEEC, in addition to those amounts he is liable to PEEC under Finding # 32, in the amount of $131,164.19.

cember of 1983, it became known to Ashworth that a series of PEEC ledger or accounting entries showed that several corporations or partnerships in which Moreno owned an interest or with which he had once been affiliated had either been loaned or advanced money by PEEC. Subsequent ledger entries grouped all the amounts previously advanced under an account in the name of Moreno, individually. Later, some of these ledger entries were shown as owed by the specific corporations.

The funds advanced by PEEC to the corporations were done without notes; without security; without benefit of any interest being charged (Tr. at 48); without any direct relationship with PEEC; and without any repayment. Additionally, Appellant owned 50% of one entity and 100% of the other corporation which on the final ledger, dated April 29, 1983, were shown as owing sums to PEEC.

It is Appellee's argument that these advances to the corporations were actually loans to Moreno and that Moreno was a fiduciary, being President of PEEC. He further argues, as the Bankruptcy Judge found, that at the time the Texas Business Corporation Act art. 2.02, subd. A(6) prohibited loans to officers [5] and directors, and thus Moreno was guilty of fraud or defalcation in a fiduciary capacity, rendering the debt of Moreno nondischargeable.[6]

To paraphrase the current popular parlance, when something looks like a duck, quacks like a duck, and smells like a duck, the fact that the Court fails to see the duck waddle does not make that something any less of a duck. In this case all the evidence presented to the Bankruptcy Judge shows that Moreno is chargeable with at least defalcation. One court defined defalcation as "the slightest misconduct, and it may not involve misconduct at all. Negligence or ignorance may be defalcation." *In re Cowley*, 35 B.R. 526, 529 (Bankr.D.Kan. 1983).

Accordingly, this Court concludes that the Bankruptcy Judges Findings of Fact with respect to the dischargeability issue are not clearly erroneous and that the Judge's rulings based on those findings were appropriate. The Judgment of the Bankruptcy Court is AFFIRMED.

SO ORDERED.

---

61. All monies owed by Moreno to PEEC both as a result of the prior judgment entered July 1, 1985, and this judgment are excepted from Moreno's discharge pursuant to 11 U.S.C.S. § 523(a)(4) on the grounds of fraud and/or defalcation while acting in a fiduciary capacity and/or embezzlement.
62. Moreno is liable for prejudgment interest at the rate of 6% per annum, as provided in Art. 5069–1.03 Vernons Annotated Texas Statutes from February 23, 1983, to date of judgement. The prejudgment interest accrues daily form that date at $21.56 per day.

63. Moreno is liable to PEEC on the July 1, 1985 judgment after all offsets and credits as of May 13, 1988, in the amount of $33,036.79." Judgment at 2–4.

5. Appellee argues that Moreno, as a 50% owner of Aztec, a 100% owner of Texican, an owner in Probo, and a 50% owner of High Tower Bedealch, may reasonably be inferred by the Court to be an officer of all of these entities, despite his contrary testimony.

6. Appellee asserts that defalcation was pled in general and was not tethered solely to loans to Appellant as an officer.